1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

# UNITED STATES  DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

JOSE PIEDAD SOLORIO,

            Petitioner,

        v.

MIKE EVANS, Warden,

            Respondent.

_____/

No. C 06-04641 MHP

**MEMORANDUM & ORDER**
**Re: Motion for Writ of Habeas Corpus**

Petitioner Jose Solorio, a prisoner at Salinas Valley State Prison, filed this petition seeking habeas relief pursuant to 28 U.S.C. section 2254.  This matter is now before the court for consideration on the merits.  For the reasons discussed below, the petition will be DENIED.

BACKGROUND

A jury convicted petitioner of five counts of attempted murder and one count of actively participating in a criminal street gang as a result of his involvement in a shooting that occurred on March 11, 2002.  In that shooting, petitioner, then fifteen years old and affiliated with the Norteno street gang, fired one round from a shotgun that injured a rival Sureno gang member in his leg and an eight-year-old bystander in his back.  The trial court sentenced petitioner to forty-seven years to life in state prison as a result of his involvement in the shooting.  His sentence has since been modified to forty-four years to life.

The shooting occurred after a series of confrontations, which were described at trial by witnesses Daniel M., who, like petitioner, was affiliated with the Nortenos, and Eduardo S., who

was affiliated with the rival Sureno gang. Resp't Exh. 4 at 2. Daniel M. testified that around 3 or 4 p.m. on the day of the shooting, he and petitioner confronted two Sureno affiliates outside an apartment complex. One of the Surenos produced a pistol, pointed it at Daniel M. and pulled the trigger. The gun did not fire, however, and the Sureno stated in Spanish that it had no bullets. Petitioner and Daniel M. then ran away to Daniel M.'s house. Resp't Exh. 3F, Reporter's Transcript of October 15, 2002 (hereinafter "10/15/2002 RT") at 799:17–801:8.

Petitioner and Daniel M. set out to seek revenge. Petitioner armed himself with a 20-gauge shotgun obtained from Daniel M.'s garage. Petitioner and Daniel M. then returned to the site where the earlier confrontation occurred. This time, the Surenos ran. The Nortenos scattered when they heard a gunshot and someone yelled that the apartment complex's security was coming. When the Nortenos reconnected some minutes later, Daniel M. testified that petitioner was now armed with a sawed-off 12-gauge shotgun. Daniel M. and petitioner then met up with other Norteno-affiliates at a friend's house. Id. at 805:3–807:8.

Around 5 p.m., the Norteno group of four or five people, including Daniel M. and petitioner, left the house where they had been socializing and went out for a walk. During the walk, the Nortenos saw a group of Surenos riding in a white car. The Nortenos recognized one of the car's passengers as Daniel S.—a Sureno also known as "Donut" with whom petitioner had a known and ongoing conflict. Several weeks earlier, petitioner had spray painted "187 Donut"—invoking the California criminal code for murder—on a fence near Donut's home. The Nortenos confronted Donut and the others in the car by angrily staring them down. The car's driver, Eduardo S., testified that the Nortenos were also flashing gang signs, calling the Surenos by the derogatory term "scraps" and challenging the Surenos to get out of the car. The car continued driving. Resp't Exh. 3G, Reporter's Transcript of October 16, 2002 (hereinafter "10/16/2002 RT") at 1041:15–1050:28.

The two groups confronted each other again a few minutes later. The Nortenos had continued their walk and had turned from the street onto a neighborhood bike path. Eduardo S. then parked the car on a dead-end street near the bike path and left the engine running as Donut and the three other Sureno passengers exited the car. These four Surenos ran onto the bike path and the two

2

1   groups spotted each other.  Both the Surenos and Nortenos threw their hands up in the air upon

2   recognition of the other.  The Surenos then lowered their hands and ran toward the Nortenos.  Two

3   of the Surenos began shooting at the Nortenos, who dropped to the ground in response.  From the

4   ground, petitioner fired one round from the 12-gauge shotgun he was carrying.  Petitioner's one shot

5   grazed one of the Sureno's legs and injured an eight-year-old bystander who had been walking along

6   the bike path.  After petitioner fired, the Surenos ran back to the white car and drove away.  Id. at

7   1053:6–1054:27; 10/15/2002 RT at 813:1–817:3.

8        The police investigation that followed uncovered firearms—including a sawed-off 12-gauge

9   shotgun matching the description of petitioner's weapon—and gang indicia in the participants'

10  residences.  At trial, this evidence was presented and numerous police officers with gang experience

11  testified about gang culture and the significance of gang rivalries.  Salinas Police Officer Mark

12  Lazzarini explained that "in the gang subculture, no insult, no matter how small, goes unanswered.

13  And gang members will retaliate against rival gang members for any type of insult that they deem to

14  show disrespect to them."  10/15/2002 RT at 917:12–20.

15       The jury found petitioner guilty of five counts of attempted murder and found that petitioner

16  acted willfully, deliberately and with premeditation on two of these counts.  The jury also found

17  petitioner guilty of active participation in a criminal street gang.  The trial court sentenced petitioner

18  to forty-seven years to life as a result of these convictions.

19       Petitioner brought ten claims on appeal to the California Court of Appeal (hereinafter "Court

20  of Appeal" or "appellate court").  The appellate court reversed one count of attempted murder and

21  agreed in part with petitioner's contention that the trial court erred in its sentencing calculation.  It

22  remanded the case for resentencing and petitioner's sentence was modified to forty-four years to life.

23  The California Supreme Court denied petitioner's request for review.

24       Petitioner then filed this federal petition for a writ of habeas corpus alleging six of the ten

25  claims originally presented to the Court of Appeal.  Petitioner alleges that federal due process

26  violations resulted from: 1) the trial court's self-defense instruction; 2) the trial court's failure to

27  define "mutual combat" in the jury instructions; 3) the trial court's failure to instruct on attempted

28

3

1  manslaughter; 4) the trial court's failure to define the burden of proof on self-defense; 5) the trial

2  court's use of California Jury Instruction ("CALJIC") 2.11.5; and 6) the insufficiency of the

3  evidence at trial.  Respondent answered these claims and petitioner filed a traverse.  The matter is

4  now ready for a decision on the merits.

5

6  JURISDICTION AND VENUE

7          Under 28 U.S.C. section 2254, federal courts have subject matter jurisdiction over habeas

8  corpus petitions that allege violations of the Constitution.  Original jurisdiction for these claims rests

9  in the district courts.  28 U.S.C. § 1331.  Because petitioner alleges that his constitutional rights have

10 been violated, his claim is properly before a federal district court.

11         Under 28 U.S.C. section 2241(d), a person in state custody may file a federal habeas petition

12 "in the district court for the district within which the state court was held which convicted and

13 sentenced him."  Therefore, this court has jurisdiction because petitioner was convicted and

14 sentenced in Monterey County, which 28 U.S.C. section 84 designates as within the Northern

15 District of California.

16

17 EXHAUSTION

18         Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings

19 either the fact or length of their confinement are required first to exhaust state judicial remedies,

20 either on direct appeal or through collateral proceedings, by presenting the highest state court

21 available with a fair opportunity to rule on the merits of each and every claim they seek to raise in

22 federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not dispute that state court remedies

23 were exhausted for the claims asserted in this petition.  The court agrees that the state court remedies

24 were properly exhausted.

25

26 STANDARD OF REVIEW

27         This court is required to analyze state habeas corpus claims under the Antiterrorism and

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, this court may entertain a

2  petition for writ of habeas corpus "[on] behalf of a person in custody pursuant to the judgment of a

3  State court only on the ground that he is in custody in violation of the Constitution or laws or treaties

4  of the United States." 28 U.S.C. § 2254(a).  The petition may not be granted with respect to any

5  claim that was adjudicated on the merits in state court unless the state court's adjudication of the

6  claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

7  clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

8  resulted in a decision that was based on an unreasonable determination of the facts in light of the

9  evidence presented in the State court proceeding."[1]  Id. § 2254(d).  Petitioner has the burden to prove

10 the violation by a preponderance of the evidence.  Silva v. Woodford, 279 F.3d 825, 835 (9th Cir.

11 2002).

12      Under AEDPA, state court rulings are to be evaluated under a "highly deferential" standard

13 of review.  Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curium).  Decisions challenged as

14 unreasonable applications of Supreme Court law must not merely be erroneous, but "objectively

15 unreasonable."  Lockyard v. Andrade, 538 U.S. 63, 75 (2003).  Where the state court does not

16 provide a reasoned decision, this court performs "an 'independent review of the record' to ascertain

17 whether the state court decision was objectively unreasonable."  Himes v. Thompson, 336 F.3d 848,

18 853 (9th Cir. 2003) (citing Delgado v. Lewis, 223 F.3d 976, 981–82 (9th Cir. 2000)).

19      Furthermore, this court analyzes claims of harmless error on habeas petitions pursuant to the

20 standard adopted in Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  See Morales v. Woodford,

21 336 F.3d 1136, 1148 (9th Cir. 2003) (applying Brecht review).  The court considers harmful only

22 those errors shown to have a "'substantial and injurious effect or influence in determining a jury's

23 verdict.'"  Brecht, 507 U.S. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

24 In other words, only error from which petitioner can establish "actual prejudice" will survive

25 harmless error analysis.  Id. (citing People v. Lane, 474 U.S. 438 (1986)).

26      Finally, with respect to new evidence presented for the first time in federal court, this court

27 presumes factual findings of a state court to be correct, and the burden falls upon petitioner to rebut

28

5

1   this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>see also</u> Taylor v.

2   Maddox, 336 F.3d 992, 1000 (9th Cir. 2004).  Factual findings made by state courts, whether trial or

3   appellate, are given this deference.  <u>Rushen v. Spain</u>, 464 U.S. 114, 120 (1983) (per curium); <u>Tinsley</u>

4   <u>v. Borg</u>, 895 F.2d 520, 526 (9th Cir. 1990).  However, where a petitioner challenges a state court's

5   findings based entirely on the state record, the "unreasonable determination" standard of 28 U.S.C.

6   section 2254(d)(2) must be applied.  <u>Taylor</u>, 366 F.3d at 999–1000.

7

8   <u>DISCUSSION</u>

9   I.       <u>Self-Defense Instructions Provided by the Trial Court</u>

10          At trial, petitioner argued that he acted in self-defense and the trial court accordingly gave

11   standard self-defense instructions to the jury.  Resp't Exh. 3H, Reporter's Transcript of October 17,

12   2002 (hereinafter "10/17/2002 RT") at 1303:13–21.  At the prosecution's request, the trial court also

13   instructed the jury on two limitations of self-defense: the quarrelsome defendant and mutual

14   combat.[2]  On appeal, petitioner contended that the factual record did not support these limitations

15   and that the instructions were inappropriate.  The Court of Appeal determined that no State due

16   process violations occurred when the trial court issued the limiting instructions.

17          Before this court, petitioner now disputes the state appellate court ruling for two reasons.

18   Although he does not address the federal standard of review under AEDPA, petitioner argues first

19   that no evidence supported the instructions and, second, that the trial court's instruction on mutual

20   combat was erroneously restrictive.

21                  A.       <u>Evidence Supporting the Instructions</u>

22          Petitioner contends that no evidence supported the quarrelsome defendant and mutual

23   combat instructions because he did not seek a quarrel nor engage in mutual combat.  Although

24   admitting to a series of confrontations with the Surenos throughout the day of the shooting,

25   petitioner argues that any proximate nexus between the earlier confrontations and the shooting was

26   broken by the passage of time.

27          The Court of Appeal examined petitioner's argument and found that the quarrelsome

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  defendant and mutual combat instructions were appropriate because petitioner engaged in a series of

2  escalating conflicts throughout the day.  The appellate court noted that after each of these conflicts,

3  petitioner and the other Nortenos involved congregated.  A reasonable interpretation of these

4  meetings, according to the appellate court, was that petitioner was planning further confrontations

5  with the Surenos.  The court further assessed the facts as follows:

6        There was no lengthy break between any of the confrontations that took place on
      March 11, 2002.  The first confrontation with Alvarado took place around 3:00 or

7        4:00 in the afternoon.  It was only around 5:00 when defendant's group went out
      for the walk that ended with the shooting.  Between the first confrontation and the

8        shooting a few hours later, defendant obtained a weapon from Daniel M.'s house,
      confronted the Surenos' at the apartment, retrieved his own shotgun, regrouped

9        with his friends, and engaged in a confrontation with the Surenos in the white car.

10  Resp't Exh. 4 at 8–9.  By examining the shooting in the context of the day's full series of events, the

11  appellate court concluded that sufficient evidence supported the two instructions limiting the defense

12  of self-defense.

13        Under 28 U.S.C. section 2254(d)(2), this court must now determine whether the appellate

14  court's decision was based on an unreasonable determination of the facts in light of the evidence.[3]

15  "A federal court may not second-guess a state court's fact-finding process unless, after review of the

16  state-court record, it determines that the state court was not merely wrong, but actually

17  unreasonable."  Taylor, 366 F.3d at 999.  Petitioner focuses on the plausibility of an alternate

18  explanation of the facts and does not argue, much less prove, that the appellate court's decision was

19  an unreasonable determination of the facts.  Petitioner's "proximate nexus" theory—contending that

20  the length of time between the confrontations throughout the day rendered the confrontations

21  unrelated—is but one interpretation of the facts.

22        A review of the record shows that the appellate court accurately discussed the evidence

23  presented at trial.  Further, the appellate court's detailed discussion of the times at which the

24  confrontations preceding the time when the shooting occurred shows that a pattern of escalating

25  hostility emerged throughout the day in question.  Over the course of the day, petitioner continued to

26  regroup with his gang associates and then engage in further confrontation with the

27  Surenos—evidence which could, as the appellate court found, suggest that petitioner was

28

    UNITED STATES DISTRICT COURT
    For the Northern District of California

7

UNITED STATES DISTRICT COURT
For the Northern District of California

1    strategizing these additional confrontations.  Petitioner reacted to two earlier confrontations in the

2    day by obtaining weapons: first, after the initial confrontation, petitioner obtained Daniel M.'s 20-

3    gauge shotgun and second, after returning from the apartment complex, petitioner retrieved his own

4    sawed-off 12-gauge shotgun.  10/15/2002 RT at 805:3–807:8.  Given this evidence related to

5    petitioner's activity and the few number of hours in which all of the confrontations occurred, the

6    Court of Appeal was not unreasonable in its determination that the trial court had before it sufficient

7    facts to warrant the limiting instructions on self-defense to which petitioner now objects.  As a

8    result, and notwithstanding petitioner's alternate explanation of the facts, no federal relief is

9    available under AEDPA.

10

11                    B.        The Trial Court's Instruction on "Mutual Combat"

12            Assuming that the mutual combat instruction was proper, petitioner argues that the

13   instruction as it was given violated his due process rights by presenting an excessively restrictive

14   limitation on self-defense.  Petitioner did not object to the scope of the mutual combat instruction at

15   trial and raised the argument only in reply before the Court of Appeal.  He now asserts that the

16   mutual combat instruction as it was given violated his due process rights because the instruction did

17   not clarify that a defendant engaged in mutual combat may nevertheless claim self-defense if his co-

18   combatant engages in a sudden and deadly counter assault.  CALJIC 5.56 (2004 revision).

19            The Court of Appeal noted that it was not bound to consider petitioner's untimely claim.

20   Nevertheless, the appellate court examined the issue on the merits and concluded that petitioner's

21   argument was unpersuasive.  The appellate court reasoned that in order for a jury to find that

22   defendant was engaged in mutual combat, it would have had to consider the confrontations that

23   occurred prior to the shooting; examining the confrontation on the bike path alone would not involve

24   a mutual combat finding because the Surenos sought out the Nortenos and opened fire first.  The

25   appellate court determined that if the jury considered the series of confrontations throughout the day,

26   it could not then find that the Surenos' attack was sudden or unexpected.  Resp't Exh. 4 at 9.

27            Due to petitioner's failure to assert his objection to the scope of the mutual combat

28

                                                        8

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    instruction at trial, petitioner's claim is procedurally flawed and inappropriate for consideration by

2    this court.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991); Paulino v. Castro, 371 F.3d 1083,

3    1093 (9th Cir. 2004) (finding that California's contemporaneous objection rule is a valid state

4    procedural bar).  On the merits, the appellate court's logic is not unreasonable.  If the jury were to

5    find the petitioner engaged in mutual combat, the jury would necessarily have considered the

6    escalating nature of the conflict between these groups of Nortenos and Surenos on the day of the

7    shooting.  The escalating conflict between the gangs brought with it implicit threats of increasing

8    and retaliatory violence.  Therefore, the appellate court was not unreasonable to conclude that the

9    mutual combat provision related to sudden counter assaults did not apply and that the trial court

10   need not have relayed the provision in its instructions to the jury.

12   II.        The Definition of Mutual Combat

13          Petitioner argues that the trial court's failure to define "mutual combat" in its instructions to

14   the jury violated his due process rights.  Under CALJIC 5.56, the trial court instructed the jury that

15   self-defense rights are limited when a person engages in mutual combat.  Petitioner did not request

16   that mutual combat be defined and the court did not *sua sponte* provide a definition to the jury.

17   Petitioner contends that as a result, the jury may have wrongly refused his self-defense argument

18   because it could not properly review the meaning of mutual combat.

19          The Court of Appeal deemed this argument "meritless."  Resp't Exh. 4 at 10.  It noted that

20   under California law, only terms with a "technical meaning peculiar to the law" must be defined by

21   the trial court.  Id. (citing People v. Bland, 28 Cal. 4th 313 (2002)).  The Court of Appeal then

22   determined that mutual combat is neither a technical term nor one peculiar to the law.  Id.

23          Petitioner disputes the appellate court finding without specifically addressing the AEDPA

24   factors.  Petitioner cites no clearly established federal law to support his contention that mutual

25   combat must be defined.[4]  After a *sua sponte* search, this court likewise found no supporting

26   precedent from either the Supreme Court or the Ninth Circuit.  Petitioner therefore fails to satisfy the

27   first AEDPA factor as he has not shown that the appellate court's decision on the mutual combat

28

9

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   instruction was contrary to or an unreasonable application of clearly established federal law.

2   To satisfy the second AEDPA factor, petitioner must show that the state court's

3   determination that mutual combat is neither a technical term nor one peculiar to the law is an

4   unreasonable determination of the facts in light of the evidence presented before the trial court.  28

5   U.S.C. § 2254(d)(2).  Petitioner cannot meet this burden.  No California authority has held that

6   mutual combat is a technical or legal term.  The fact that petitioner did not request a definition at

7   trial also suggests that mutual combat is not a legal term.

8   Further, while petitioner makes much of the fact that different dictionaries and literary

9   sources define "mutual" in slightly different ways, the existence of varied popular definitions does

10  not prove that mutual is a technical or legal term.[5]  The variety of popular definitions of "mutual"

11  underscores the importance of the jury's function.  A jury of one's peers is best equipped to draw

12  upon the moral compass of the community and the varied experiences of its members to determine

13  the appropriate definition of a popular term.  The jury's very purpose is to apply the common,

14  everyday understanding of its members when reaching findings of fact.  As a result, the appellate

15  court did not unreasonably determine that the trial court need not have defined mutual combat.

16

17  III.   Instructions on Attempted Manslaughter

18  Petitioner contends that the trial court's failure to instruct on attempted manslaughter as a

19  lesser-included offense violated his due process rights.  Attempted manslaughter instructions were

20  appropriate, petitioner contends, because sufficient evidence existed at trial to allow a reasonable

21  jury to conclude that petitioner did not have the malice required for an attempted murder conviction.

22  If petitioner acted in the heat of passion or with an unreasonable but good faith belief in his right to

23  self-defense, then attempted manslaughter, not attempted murder, would be the appropriate charge.

24  In arguing for the propriety of lesser-included offense instructions, petitioner does not

25  present a cognizable claim for federal relief.  The Supreme Court has declined to determine if a

26  federal due process right exists to have jury instructions read on lesser-included offenses in non-

27  capital cases.  Beck v. Alabama, 447 U.S. 625, 638 n. 14 (1980).  The Ninth Circuit has spoken

28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1   directly to this question and found that "[u]nder the law of this circuit, the failure of a state trial

2   court to instruct on lesser included offenses in a non-capital case does not present a federal

3   constitutional question." Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) (citing Turner v.

4   Marshall, 63 F.3d 807, 819 (9th Cir. 1995)).  Under AEDPA, with no federal constitutional question

5   at issue, this court cannot further address this claim.

6

7   IV.     Instructions on the Burden of Proof Regarding Self-Defense

8           Petitioner next argues that his due process rights were violated because the trial court refused

9   a requested instruction specifying that the prosecution bore the burden of proof to show that

10  petitioner did not act in self-defense.  The Court of Appeal determined that petitioner was not

11  prejudiced by the omission of this instruction.  No prejudice existed, according to the appellate

12  court, because the jury instructions considered together accurately portrayed the prosecution's

13  burden of proof.  Resp't Exh. 4 at 12.

14          Petitioner disputes the Court of Appeal's holding by citing to Francis v. Franklin, 471 U.S.

15  307 (1985), which concerned due process violations in unclear jury instructions.[6]  By citing to the

16  Supreme Court, petitioner invokes the first prong of the AEDPA standard and suggests that the state

17  appellate decision is contrary to, or an unreasonable application of, federal law.  28 U.S.C. §

18  2254(d)(1).  Notably, however, the Court in Francis applied the same analysis as that used by the

19  Court of Appeal in the present matter.  In Francis, the Court found that "the question is whether

20  these instructions, when read in the context of the jury charge as a whole, violate [due process]."

21  471 U.S. at 309.  Likewise, the Court of Appeal analyzed the entirety of the jury instructions given

22  during the trial court proceedings in order to determine that the omitted instruction did not prejudice

23  the petitioner or violate his due process rights.  Resp't Exh. 4 at 12.

24          In analyzing the entirety of the jury instructions as directed by Francis, the appellate court

25  reviewed the number of instances in which the trial court explained that the prosecution bore the

26  burden of proving petitioner's guilt.  The Court of Appeal found at least four instances where the

27  instructions directed the jury on the prosecution's burden and determined that these instructions

28

11

UNITED STATES DISTRICT COURT
For the Northern District of California

1  together effectively informed the jury about the burden of proof on self-defense.  See Resp't Exh.

2  3H at 1282–83, 1289–90, 1294–96, 1303–05.  For example, the trial court explained that when

3  considering circumstantial evidence, the jury "must accept that interpretation that points to

4  [petitioner's] innocence."  Id. at 1282–83.  The court reiterated the burden again by stating that "the

5  People have the burden of proving the truth" of the attempted murder allegations.  Id. at 1294.  The

6  Court of Appeal's detailed examination of the jury instructions and its finding that the jury heard at

7  least four separate times that the prosecution bore the burden of proving guilt demonstrate that the

8  Court of Appeal rendered a decision that is not contrary to, or an unreasonable application of,

9  federal law.  See 28 U.S.C. § 2254(d)(1).  Indeed, the Court of Appeal's decision follows the

10  analysis set forth in Francis.

11  　　　　Petitioner does not raise any argument under the second AEDPA factor concerning the

12  reasonableness of the appellate court's decision in light of the evidence presented.  However, the

13  repeated instructions related to the burden of proof suggest that the jury was well-informed about

14  how they were expected to adjudge the facts of the case when rendering their decision.  Given that

15  the jury was likely well informed, the Court of Appeal was not unreasonable to conclude that

16  petitioner was not prejudiced by the lack of a specific instruction relating to the burden of proof on

17  self-defense.

18

19  V.　　Unmodified CALJIC No. 2.11.5 Instruction

20  　　　　Petitioner argues that the following language of CALJIC 2.11.5 was prejudicial and violated

21  his due process rights:

22  　　　　There has been evidence in this case indicating that a person or persons other than
　　　　the defendant was or may have been involved in the crime for which the defendant
23  　　　　is on trial.

24  　　　　There may be many reasons why that person or persons is or is not here on trial.
　　　　Therefore, do not discuss or give any consideration as to why the other person or
25  　　　　persons is not being prosecuted in this trial or whether there [sic] have been or will
　　　　be prosecuted. Your sole duty is to decide whether the People have provided the
26  　　　　guilt of the defendant, Mr. Solorio, in this trial.

27  Petitioner contends that this instruction—which was intended to address why other potential

28

12

UNITED STATES DISTRICT COURT
For the Northern District of California

1    defendants were not on trial with Mr. Solorio—could have prompted the jury to wrongly disregard

2    the motives and criminal liability of two key prosecution witnesses at trial.  These witnesses—

3    Eduardo S. and Daniel M.—were charged as a result of the same incident at issue in petitioner's case

4    and both testified in accordance with their plea agreements.

5           The Court of Appeal found that petitioner's argument failed in two respects.  First, under

6    California law, petitioner waived this error by not requesting a modification of the instruction during

7    trial.  Resp't Exh. 4 at 13.  Second, on the merits, petitioner's argument was unpersuasive because

8    the error was not prejudicial.  Petitioner did not suffer prejudice as a result of this instruction,

9    according to the state appellate court, for four reasons: 1) the instruction applied to at least five

10   people besides Eduardo S. and Daniel M.; 2) the jury received instructions relating specifically to

11   the credibility of Eduardo S. and Daniel M.; 3) petitioner's counsel throughly cross-examined

12   Eduardo S. and Daniel M.; and 4) petitioner's counsel referred to the potential impact of the plea

13   agreements on the credibility of these witnesses in his closing argument.  Id.

14          Given the Court of Appeal's holding, this court can offer no relief concerning this error.

15   Federal courts cannot offer redress when a petitioner has waived an error under state law in a

16   manner permissible under the federal Constitution.  Coleman v. Thompson, 501 U.S. at 729.[7]

17

18   VI.    Sufficiency of the Evidence

19          Petitioner contends that the evidence presented to the jury was insufficient to show malice or

20   prove that petitioner acted unjustifiably.  The Court of Appeal disagreed, finding that the jury had

21   ample evidence to support a finding that petitioner either provoked the confrontation or engaged in

22   mutual combat.  Resp't Exh. 4 at 14.  Specifically, the court pointed to the following evidence to

23   support its conclusion:

24              There was an existing rivalry between the two groups.  Defendant kept his
                shotgun at a residence along with an arsenal of loaded weapons.  He painted the
25              '187 Donut' warning on the fence . . . the rival groups had been confronting each
                other all afternoon. Defendant armed himself immediately following the first
26              confrontation and then went out looking for the people who had aimed a gun at
                his friend.  On his third and final walk of the afternoon or early evening,
27              defendant encountered the Surenos in the white car and joined the others in
                taunting them to get out of the car, presumably to fight.

28

13

<u>Id.</u>

Under AEDPA, this court must apply the Supreme Court's test from <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979), to determine if the Court of Appeal properly assessed the sufficiency of the evidence. <u>See</u> <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005) (establishing federal standard of review in sufficiency of the evidence challenges). Under <u>Jackson</u>, the standard is a loose one. The Court of Appeal was required to determine only whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. The Court of Appeal's reasoning related to petitioner's ongoing rivalry with the Surenos, his efforts to arm himself and his activities in taunting the Surenos and provoking confrontation. This satisfies the low threshold established in <u>Jackson</u> because it lists evidence that would allow a rational trier of fact to convict petitioner of acting with malice.

Petitioner ignores the <u>Jackson</u> standard when repeatedly emphasizing that the passage of time indicates that he did not act with malice. The question on appeal is not whether petitioner can present an alternative rational explanation of the facts. Petitioner must show that no rational trier of fact could have found malice. The passage of approximately one hour after a series of escalating conflicts fails to satisfy the standard set forth in <u>Jackson</u>, especially in the context of a longstanding gang rivalry. As a result, no due process violation has been shown.

<u>CONCLUSION</u>

For the foregoing reasons, the petition for wit of habeas corpus is DENIED.


IT IS SO ORDERED.

Dated: May 6, 2008

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

*UNITED STATES DISTRICT COURT*
*For the Northern District of California*

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

ENDNOTES

1.      Although it also relates to factual findings, 28 U.S.C. section 2254(e) is not relevant in the current proceedings because petitioner refutes only the facts found by the state court and does not present new evidence in federal court.  See Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004).

2.      The two instructions at issue are versions of CALJIC No 5.55 and 5.56.  The trial court's version of CALJIC 5.55 described the quarrelsome defendant, stating that "the right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense."  10/17/2002 RT at 1305.  The trial court's version of CALJIC 5.56 described mutual combat as:

> The right of self-defense is only available to a person who engages in mutual combat if he has done all of the following:
>
> 1. He has actually tried, in good faith, to refuse to continue fighting;
> 2. He has clearly informed his opponent that he wants to stop fighting;
> 3. He has clearly informed his opponent that he has stopped fighting; and
> 4. He has given his opponent the opportunity to stop fighting.
>
> After he has done these four things, he has the right to self-defense if his opponent continues to fight.

Id.

3.      Petitioner does not appear to argue that the trial court's instruction was "contrary to, or involved an unreasonable application of, clearly established federal law."  See 28 U.S.C. § 2254(d)(1).  As a result, the court will focus on the merits of petitioner's claims under 28 U.S.C. section 2254(d)(2).

4.      Petitioner cites two Supreme Court cases and one Ninth Circuit case in his argument, but fails to provide any discussion on the relevance of these cases to the present matter.  See In re Winship, 397 U.S. 368 (1988); Sullivan v. Louisiana, 508 U.S. 275 (1993); Suniga v. Bunnell, 998 F. 2d 664 (9th Cir. 1993).  This court will not extrapolate, in lieu of explanation from petitioner, as to the relevance of these citations, which neither address mutual combat nor the need to provide a definition thereof.

5.      Petitioner also argues that "mutual combat" is not a commonly understood term because it is not a term in popular use.  Petitioner contends that if Yale History Professor Joanne B. Freeman, author of Affairs of Honor: National Politics in the New Republic, finds no use for the expression "mutual combat" in her account of the Hamilton-Burr duel of 1804, then "mutual combat" cannot be a commonly understood phrase.  This argument amounts to an unpersuasive case study in flawed inductive reasoning.

16

6.      For reasons unclear to this court, petitioner provides a lengthy discussion arguing that the omission of the burden of proof instruction was in error—a point conceded by the State—but just one short paragraph to argue that this error was prejudicial.  Given the State's admitted error, this court will only address prejudice on this issue.

7.      It is unclear why petitioner did not raise an ineffective assistance of counsel claim based on counsel's waiver of this error at trial.  The facts relating to counsel's role are not before the court; however, it appears that petitioner could possibly have a tenable claim relating to the assistance he received at trial.

UNITED STATES DISTRICT COURT
For the Northern District of California

17